AO 241 (Rev. 5/85)

**PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

**FILED**

AUG - 4 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# United States District Court

District    SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Name    CURTIS LEROY FREEMAN | Prisoner No.    V-94399 | Case No. |

Place of Confinement

MULE CREEK STATE PRISON, P.O. BOX 409020, Ione, CA 95640

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| CURTIS LEROY FREEMAN, | v.    MULE CREEK STATE PRISON (WARDEN) |

The Attorney General of the State of:    CALIFORNIA

**'08 CV 1421 J RBB**

2254 ✓    1983
FILING FEE PAID
Yes ✓    No
IFP MOTION FILED
Yes ✓    No
COPIES SENT TO
Court ✓    Pro Se

## PETITION

1. Name and location of court which entered the judgment of conviction under attack  Riverside County Superior Court - Southwest

2. Date of judgment of conviction  5/19/2005

3. Length of sentence  34 years

4. Nature of offense involved (all counts)  CNT. 1, PC 28(C)(2); 2, 286(C)(2); 3, 664/261 (A)(2); 4, 664/261(A)(2); 5, 288A(C)(2); 6, 288A(C)(2); 7, 289(A)(1)

5. What was your plea? (Check one)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☒
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☒ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

(2)

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court  court of Appeal, Fourth Appellate District, Div. Two

(b) Result  Denied

(c) Date of result and citation, if known  Unknown

(d) Grounds raised  Insufficient evidence to support two convictions of Forcible oral copulation; Consecutive full term sentences were illegal; failure ti instruct jury on lesser included offenses.

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court  California Supreme Court

(2) Result  Denied

(3) Date of result and citation, if known  November 29, 2006

(4) Grounds raised  To determine whether the prosecution waives the imposition and aggravated sentence by failing to request it in the trial court; Consecutive sentences were illegal; Trial Court failed to instruct jury properly on lesser included offenses.

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court  _____

(2) Result  _____

(3) Date of result and citation, if known  _____

(4) Grounds raised  _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

Yes ☐  No ☒

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court  _____

(2) Nature of proceeding  _____

(3) Grounds raised  _____

AO 241 (Rev. 5/85)

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐  No ☒

(5) Result _____

(6) Date of result _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised _____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐  No ☒

(5) Result _____

(6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.     Yes ☒  No ☐
(2) Second petition,        Yes ☐  No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.
    CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(I) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: APPELLANTS RIGHT TO DUE PROCESS WAS VIOLATED BECAUSE THE TRIAL COURT FAILED TO INSTRUCT JURY ON LESSER INCLUDED OFFENSES

Supporting FACTS (state *briefly* without citing cases or law) The FACTS are argued well in in Appellants Opening Brief on Direct Appeal, pp.10-15;That brief is submitted as a Seperate Memorandum to this Habeas Corpus Petition. (Court of Appeal Case No. E038826)

B. Ground two: APPELLANTS RIGHT TO DUE PROCESS WAS VIOLATED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT TWO CONVICTIONS OF FORCIBLE ORAL COPULATION

Supporting FACTS (state *briefly* without citing cases or law): The FACTS are argued well in Appellants Opening Brief on Direct Appeal; pp. 16-22; Please refer to Appellants Opening Brief submitted as a Seperate Memorandum to this Habeas Corpus Petition. (Court of Appeal Case No. E038826)

(5)

AO 241 (Rev. 5/85)

C. Ground three: APPELLANTS DUE PROCESS RIGHTS WERE VIOLATED ON COUNTS ONE, FIVE, SIX, AND SEVEN WHICH VIOLATED APPELLANTS SIXTH AMENDMENT RIGHT TO A JURY TRIAL BECAUSE THE JURY DID NOT DETERMINE WHETHER THE ALLEGED OFFENSES OCCURED ON SEPERATE OCCASIONS

Supporting FACTS (state *briefly* without citing cases or law):

The FACTS are agin argued well in Appellants Opening Brief on Direct Appeal, pp.22-24; Please refer to that brief as it is submitted as a Seperate Memorandum to this Habeas Corpus Petition. (Court of Appeal case No. E038826)

D. Ground four: REVIEW IS NECESSARY TO DETERMINE WHETHER THE PROSECUTION WAIVES THE IMPOSITION AND AGGRAVATED SENTENCE BY FAILING TO REQUEST IT IN THE TRIAL COURT.

Supporting FACTS (state *briefly* without citing cases or law): Please refer to Appellants Petition For Review in the California Supreme Court, pp.3-5; That Petition For Review Brief is subitted as a Seperate Memorandum to this Habeas Corpus Petition. (California Supreme Court Case No. Not stated.

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☒  No ☐

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing _____

_____

(b) At arraignment and plea _____

_____

AO 241 (Rev. 5/85)

(c) At trial _____

_____

(d) At sentencing _____

_____

(e) On appeal   Jean Matulis, P.O. BOX 1237,   Cambria, CA 93428

_____

(f) In any post-conviction proceeding _____

_____

(g) On appeal from any adverse ruling in a post-conviction proceeding   Jean Matulis, P.O. BOX 1237,

Cambria, CA 93428 _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☐ No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒
(a) If so, give name and location of court which imposed sentence to be served in the future: _____

_____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed

July 29, 2008
_____
(date)

_____
Signature of Petitioner

(7)

CURTIS LEROY FREEMAN #V94399
MULE CREEK STATE PRISON
P.O. BOX 409020
IONE, CA 95640

In Propria Persona





FILED

AUG - 4 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

CURTIS LEROY FREEMAN,
                  Petitioner,

        V.

MULE CREEK STATE PRISON, (Warden)
                  Respondent,

'08 CV 1421 J RBB

CASE NO.

SEPERATE MEMORANDUM IN
SUPPORT OF HABEAS
CORPUS PETITION



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT, DIVISION TWO

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) ) ) | Court of Appeal No. E038826 |
| Plaintiff and Respondent | ) ) ) | Riverside County Superior Court No. SWF009268 |
| v. | ) ) | |
| CURTIS LEROY FREEMAN, | ) ) | |
| Defendant and Appellant | ) ) | |

APPEAL FROM THE JUDGMENT OF THE SUPERIOR COURT
RIVERSIDE COUNTY

The Honorable Albert J. Wojcik, Judge Presiding

---

## APPELLANT'S OPENING BRIEF

---

### STATEMENT OF APPEALABILITY

This appeal is from a judgment of conviction following a jury trial and is authorized under Penal Code section 1237, subdivision (a).[1]

### STATEMENT OF THE CASE

By amended information, appellant Curt Leroy Freeman was charged with seven counts as follows: In Counts 1 and 2, with sodomy under section 286, subdivision (c)(2); in Counts 3 and 4, with attempted rape under sections 261, subdivision (a)(2), and 664; in Counts 5 an 6, with oral

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

1

# TABLE OF CONTENTS

STATEMENT OF APPEALABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.      APPELLANT'S RIGHT TO DUE PROCESS WAS
        VIOLATED BECAUSE THE TRIAL COURT FAILED TO
        INSTRUCT THE JURY ON THE LESSER INCLUDED
        OFFENSES OF ATTEMPT AND BATTERY AS TO
        COUNTS 1 AND 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.      Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        C.      Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.     APPELLANT'S DUE PROCESS RIGHTS WERE
        VIOLATED BECAUSE THERE WAS INSUFFICIENT
        EVIDENCE TO SUPPORT TWO CONVICTIONS OF
        FORCIBLE ORAL COPULATION. . . . . . . . . . . . . . . . . . . . . . . 16

III.    IMPOSITION OF CONSECUTIVE FULL TERM
        SENTENCES ON COUNTS ONE, TWO, FIVE, SIX, AND
        SEVEN UNDER SECTION 667.6, SUBDIVISION (D)
        VIOLATED APPELLANT'S SIXTH AMENDMENT
        RIGHT TO A JURY TRIAL BECAUSE THE JURY DID
        NOT DETERMINE WHETHER THE ALLEGED
        OFFENSES OCCURRED ON SEPARATE OCCASIONS. . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

# TABLE OF AUTHORITIES

**Federal Cases**                                                    Page(s):

*Apprendi v. New Jersey* (2000)
530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] . . . . . . . . . . . . . . . . . . 23

*Blakely v. Washington*  (2004)
532 U.S. 296 [124 S.Ct. 2531, 159 L.Ed.2d 403] . . . . . . . . . . . . . . . . . . 23

*Beck v. Alabama* (1980)
447 U.S. 625 [100 S. Ct. 2382, 65 L. Ed. 2d 392] . . . . . . . . . . . . . . . . . . 12

*Hopper v. Evans* (1982)
456 U.S. 605 [72 L.Ed.2d 367, 102 S.Ct. 2049] . . . . . . . . . . . . . . . . . . . 12

*Jackson v Virginia* (1979)
443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] . . . . . . . . . . . . . . . . . . . . 16

*Keeble v. United States* (1973)
412 U.S. 205 [93 S. Ct. 1993, 36 L. Ed. 2d 844] . . . . . . . . . . . . . . . . . . . 13

**State Cases**

*In re Sylvester* (2006)
137 Cal. App. 4th 601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Aguilar* (1989)
214 Cal. App. 3d 1434 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Anderson* (1975)
15 Cal. 3d 806 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Barton* (1995)
12 Cal. 4th 186 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 13

*People v Bassett* (1968)
69 Cal.2d 122 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*People v. Bergschneider* (1989)
211 Cal.App.3d 144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19. 20

**State Cases (cont.)**                                    **Page(s):**

*People v. Birks* (1998)
19 Cal. 4th 108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Black* (2005)
35 Cal. 4th 1238 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*People v. Breverman* (1998)
19 Cal. 4th 142 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*People v. Cole* (2004)
33 Cal. 4th 1158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Cochran* (2002)
103 Cal.App.4th 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21, 22

*People v Davis* (1995)
10 Cal.4th 463 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Espinoza* (2002)
95 Cal.App.4th 1287 . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 21, 22

*People v. Francis* (1969)
71 Cal. 2d 66 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Hardy* (1992)
2 Cal. 4th 86 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*People v. Hecker* (1990)
219 Cal. App. 3d 1238 . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

*People v. Hughes* (2002)
27 Cal. 4th 287 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 15

*People v Johnson* (1980)
26 Cal.3d 557 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*People v. Lagunas* (1994)
8 Cal. 4th 1030 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**State Cases (cont.)** Page(s):

*People v. Leal* (2004)
33 Cal. 4th 999 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*People v. Lohbauer* (1981)
29 Cal. 3d 364 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Lopez* (1998)
19 Cal. 4th 282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*People v. Pitmon* (1985)
170 Cal.App.3d 38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*People v. Ramkeesoon* (1985)
39 Cal. 3d 346, 351 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*People v. Sanchez* (1989)
208 Cal.App.3d 721 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*People v. Schulz* (1992)
2 Cal.App.4th 999 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*People v. Senior* (1992)
3 Cal.App.4th 765 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 10, 20

*People v. Splawn* (1985)
165 Cal. App. 3d 553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Superior Court (Kneip)* (1990)
219 Cal. App. 3d 235 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*People v. Toro* (1989)
47 Cal. 3d 966 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Watson* (1956)
46 Cal. 2d 818 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Wickersham* (1982)
32 Cal. 3d 307 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes**                                                    **Page(s):**

Government Code Section 29550 ............................... 2

Penal Code Sections

   261 ................................................. 1
   288 ............................................. 18, 20
   288a ............................................ 2, 17
   286 ............................................. 1, 10
   289 ................................................. 2
   664 ................................................. 1
   667.6 ........................................... 2, 22
   1202.4 ............................................. 2
   1202.45 ............................................ 2


**Constitutional Authority**

California Constitution

   Cal. Const. art. 6, sec. 13 ............................... 15

United States Constitution

   U.S. Const. Amend. V ................................... 12
   U.S. Const. Amend. XIV ............................. 12, 16

copulation under section 288a, subdivision (c)(2); and in Count 7, with forcible penetration with a foreign object under section 289, subdivision (1)(1). (CT 64-66.) A jury found appellant guilty of all counts. (CT 103-104.) The jury also made findings that the victim was particularly vulnerable, and that the defendant took advantage of a position of trust or confidence to commit the offense. (CT 174-175.)

At sentencing, the court deemed Count 1 as the principle term and sentenced appellant to the aggravated term of eight years. (RT II 563.) The court selected aggravated eight-terms for Counts 2, 5, 6 and 7, and imposed the full terms consecutively under section 667.6, subdivision (d). (RT II 562-563.) On Counts 3 and 4, the court imposed one third of the mid-term which was one year each, consecutively. (RT II 563.) The total sentence was 42 years. Appellant received 117 days of actual credit with 17 days of good time credit. (RT II 564.)

Appellant was ordered to pay a restitution fine of $1400 under section 1202.4, and a parole restitution fine of $1400 under section 1202.45. Appellant was also ordered to pay the victim $50,000 under section 1202.4, subdivision (f)(3)(F). (RT II 564.) Additionally, appellant was ordered to pay for the presentence report in an amount not to exceed $318, a booking fee in the amount of $110, a separate booking fee of $10 under Government Code section 29550, and a $20 security fee. (RT II 565.) Appellant filed a timely notice of appeal. (CT 209.)

## STATEMENT OF FACTS

### PROSECUTION CASE

Robert Zimmerman, Ph.D., a psychologist at the Inland Regional Center evaluated Annette for eligibility of services, which may be based upon mental retardation, autism, epilepsy, and/or cerebral palsy. (1 RT 44-

45.) He determined that Annette was not mentally retarded, but that her overall ability to function intellectually, solve problems in the community, or with her daily living skills was in the low average range. (1 RT 54.) Annette was also deaf. (1 RT 47.) Annette qualified for regional center services based on her cerebral palsy, but not for any of the other categories. (1 RT 57.)

Annette had lived with her grandmother since until she was 18 years old and the grandmother died. (1 RT 63, 92.) Then, Annette went to live with her Aunt Nancy and her husband, the appellant. (1 RT 64-84.) Gina Gathercole had previously been married to Annette's father, and had known Annette for the last thirty-three years, from the time Annette was 5 or 6 years old. (1 RT 61-62.) In March of 2004, Annette and her Aunt Margie, who is also deaf, came to visit Gathercole, and Annette began screaming hysterically, and using sign language, told her that appellant had hurt her with his finger. (1 RT 66, 131.) She also indicated that appellant having sex with her, and would grab her breasts and buttocks. (1 RT 67, 83, 87. 88, 89.) The next day, Gathercole reported this incident to the Sheriff's office, who sent a deputy to bring Annette to the station, where Gathercole helped facilitate the communication through sign language, writings and drawings. (1 RT 71-72.) Gathercole then accompanied Annette to the hospital for a rape exam. (1 RT 73.) Annette knew how to say certain words, including the word "Help." (1 RT 85.) Over the years, Annette had reported to Gathercole that she was scratched and abused by her Aunt Nancy, but until March of 2004, had never reported being abused by appellant. (1 RT 82-83.)

After Gathercole reported Annette's allegations to the Sheriff, Deputy Leo James Marin went to the residence and asked Annette and

3

Margie to come to the station for an interview. (1 RT 153, 156-158.) Annette appeared angry and upset and she was crying. (1 RT 159.) At that time, Annette communicated with him by notes and by making motions. (1 RT 164.) Deputy Marin understood Annette to say that she had been sexually assaulted vaginally twice that day, and that she had been abused sexually for twenty years. (1 RT 162-163.) Annette told him that Nancy knew appellant was doing bad things to her. (1 RT 163.)

At trial, Annette testified that she has a hard time using her legs and walking due to her cerebral palsy. It hurts to walk, and she is unable to open her legs wide. (1 RT 90-91, 95.) After her grandmother died, she wanted to move in with appellant and her aunt and eventually did so. (1 RT 96-97.) After living there for a while, appellant started touching her every day, and doing sex things to her in the garage and once in the kitchen. (1 RT 99-100, 103-104, 111-112, 114.) Annette described licking appellant's penis on one occasion. He motioned for her to come into the garage and he just showed her and she licked it for maybe a minute but did not like it. (1 RT 111.) He would also try and make her spread her legs apart and it hurt. (1 RT 100.) A few times he tried to insert his penis into her vagina, but it was too small. (1 RT 108.) Appellant could not put his penis inside her anus, but would masturbate on her butt. (1 RT 104.) She tried to refuse and tried to make noise so her aunt would hear her but appellant would say, "Don't say anything, just keep it quiet." (1 RT 100-101.) When he grabbed her breasts she would try and say "Ouch" because it hurt a lot, and would tell him to stop, but he did not care and kept doing it. Annette was afraid because appellant was big and powerful and very strong. (1 RT 102.)

Annette never called 911 because she was deaf. She did not tell her Aunt Nancy because she felt Nancy would have been mad at her. (1 RT

4

109.) Although her Aunt Margie lived with them for fifteen years and was also deaf, she never told her or any of the six people in the household or any family member. (1 RT 135-136, 148-149.) Annette also never reported it when she went to the doctor for regular exams. (1 RT 137.) Annette received money from Social Security. (1 RT 138.) She was angry at her Aunt Nancy for holding back money from her and she wanted to move out. (1 RT 138-139.) She did not begin to think about moving out until March of 2004. (1 RT 140.)

Cheryl Maier, a sexual assault nurse examiner at Rancho Springs Medical Center, examined Annette in March of 2004, with Gathercole present to assist with communication. (1 RT 167, 170.) Annette told her that appellant had had vaginal intercourse with her that day. (1 RT 186-187.) There was a slight discoloration on Annette's left breast, but it was not clear enough to support a conclusion that it was a bruise. (1 RT 178.) Maier's report contained "no findings" as to dried or moist secretions, no findings as to the vagina or cervix.' (1 RT 179.) Maier checked "not applicable" with respect to examination of the buttocks and rectum because there were problems examining Annette due to previous operations and limited mobility. (1 RT 179.) There were no specific findings to support a sexual assault and no signs of trauma in the genital, oral or rectal areas. (1 RT 179.) In Maier's experience, a lack of findings did not necessarily mean a person has not been sexually assaulted. (1 RT 180-181.)

Deputy Sheriff Reece Burchett interviewed appellant on September 10, 2004, after appellant called to find out how the investigation was going. (1 RT 192-195, 216-221.) Appellant told Burchett he believed Annette had the mental capacity or education of a fifth grader. (1 RT 196-197.) He also said he believed Annette was still a virgin. (1 RT 197-198.) Appellant

5

denied having sexual contact with Annette, although he stated that on one occasion about six years ago he had touched her breast after she had complained that her breast was bothering her. (1 RT 198-199.) He denied being sexually attracted to Annette. (1 RT 199-200.) At one point in the interview after more questioning, appellant stated that he had never penetrated Annette's vagina but that he had had anal sex with her three or four times a few years ago. (1 RT 200-201.) Appellant denied using any force with her. (1 RT 201.) He said the first three or four times he asked her to have anal sex she said "no" but he kept asking her and she eventually agreed. (1 RT 202.)

In the next few months they had sexual contact a few more times and when appellant would ask her, Annette would shrug her shoulders and didn't care one way or another because she knew it would be over very quickly. (1 RT 202-205.) Appellant would initiate contact with Annette by signing to her the words "make you happy" or "make you feel good." (1 RT 225.) He perceived that Annette was curious about sex. (1 RT 225-226.) Appellant described incidents of oral sex and manual sexual contact. (1 RT 208-209.) After one of the sexual encounters, Annette told him to stop, and he did. (1 RT 205-206.) She also told appellant that he was like her father, and appellant apologized to her and told her it would not happen again. (1 RT 207-208.)

Appellant told Deputy Burchett that he was a "pervert" because he was Annette's uncle. (1 RT 210.) At Burchett's suggestion, appellant wrote a letter to Annette in which he said he was sorry and asked her to forgive him for "the terrible things" he had done to her. (1 RT 211-212.) He further wrote that as her uncle, he had broken her trust and love for him, and deserved whatever happened to him. (1 RT 212.) Appellant also told

6

Deputy Burchett that he felt bad because he was a married man and had been having sex with Annette. (1 RT 230.)

Deputy Burchett and another officer, Michelle Gamboa, did a follow-up interview with appellant on September 21, 2004. A video tape of the interview was shown to the jury and a transcript of the tape was admitted into evidence. (See CT 78-102; Prosecution Exhibit 5B.) During the interview, appellant admitted to having sexual contact with Annette and that some of it was forced. (CT 85-86.)

**DEFENSE CASE**

Nancy Freeman had been married to appellant for thirty-two years and has two children. (1 RT 240-241.) Annette's father was Nancy's brother, and when Annette was identified as having cerebral palsy and being deaf as an infant, she went to live with her grandmother because neither parent wanted her. (2 RT 242-245.) Nancy learned to communicate with Annette from the time Annette was a child, and she took care of her when she went to the hospital to have various surgeries. (2 RT 246-247.) Annette came to live with Nancy at the age of seventeen or eighteen after the grandmother died. (2 RT 247-248.) Annette was not "retarded" and acted like everyone else, going shopping, watching television, reading books and corresponding with friends from school. (2 RT 248-250.) For a while, Annette shared a room with Nancy's sister, Margie, who was also deaf, but eventually she moved into the basement when it was converted into a room. (2 RT 248, 252.) Annette received social security which went to Nancy for her necessities, and Nancy gave Annette about $115 per month to buy whatever she wanted. (2 RT 253-254.)

Over the years Annette did not seem unhappy and never expressed

any desire to move out or complained about living there. (2 RT 263-265.) She knew how to communicate with gestures and writings, and was trained to use a telephone system. (2 RT 267.) Occasionally, Annette would act out and "throw fits" if she didn't have a coke. (2 RT 280.) Once, over the twenty years Annette lived with them, appellant smacked her on the rear. (2 RT 281.) Nancy was unaware of sexual activity appellant had with Annette. (2 RT 281-282.) Annette had the ability to scream but only did so when she fell. Nancy occasionally saw Annette go back and forth to the garage, but never heard her screaming from the garage. (2 RT 288.)

Nancy was present when officers came to the residence to take Annette down for a rape kit test. Annette signed, "no" in response to a symbol for sexual intercourse. (2 RT 285-286, 289.) Annette gave Nancy a hug and then they took her away. (2 RT 286.)

Michael Jeremy Brady did yard work with appellant and knew the family for about eighteen years, including Annette. (2 RT 292-294.) He was about the same age as Annette and they exchanged Christmas cards and played together, spraying each other with squirt bottles and the like. (2 RT 294-295.) He would spend 20 to 30 hours a week at the house, eating, watching television, and spending time with the family including Annette. (2 RT 295-296.) Annette had a sense of humor and was always happy. (2 RT 296-297.) She never complained about appellant or about the living conditions at the home. (2 RT 297-298.)

Appellant testified on his own behalf. (2 RT 302.) He lived with Annette for approximately 20 years along with his family and Annette's Aunt Margie, who was also deaf. (2 RT 307-309, 311.) Appellant, himself, has a disability in that he does not have a right hip and has scoliosis of the spine. (3 RT 303.) The extended family would all interact together, eat

8

together and play games. (2 RT 310.) Most of the family knew how to communicate with Annette. (2 RT 310.) Appellant and Annette occasionally joked about sex and she seemed curious about it. (2 RT 313.)

Occasionally, appellant would watch pornographic movies in the living room, which also served as his bedroom due to his wife's nocturnal kicking and his hip injury. (2 RT 314-315, 317.) Some time in the year 2000, Annette came out while he was watching those videos. (2 RT 317-318.) On one occasion, appellant was masturbating while watching the video, and he noticed she had sneaked up on him and was watching. (2 RT 319-320.) She seemed curious, so he asked her if she wanted to hold it. (2 RT 320-321.) She reached out and grabbed it, and then she let go. (2 RT 321.) Over the months, things progressed very slowly. He would go out to the garage to do laundry or work on something, and then she would come in. He would ask what she wanted and she would shake her head and say "Nothing." He asked her if she wanted to have sex, and she would say "no." (2 RT 322, 324.) At that point, he would not continue. (2 RT 324.) Annette said no on five or six occasions. (2 RT 325.) Then once she just shrugged her shoulders and said, "okay," and consensually had anal sex with him. (2 RT 325-326.) On other occasions, they had sex and he would always ask her first, and only pursued it if she said "yes." (2 RT 329.) He never forced her or pinned her down to have sex, although he would grope her sometimes without her permission. (2 RT 331-332, 353-354, 356-357.)

After the police came over in March of 2004, appellant first lied to his wife about having sex with Annette because he was embarrassed. (2 RT 332-334.) Afterwards, he did not see Annette or Margie for about six months, and was worried about them, especially Annette because of her allergies. That was when he called the sheriff's office to ask about the

9

status of the investigation. (2 RT 335-336.) When he wrote a letter to Annette, he was embarrassed and sorry, but did not mean to indicate that he had forced or raped Annette. (2 RT 339-340.) When he was interviewed the second time in September of 2004, he felt confused and pressured by their questioning, but maintains he did not ever force Annette into having sexual relations. (2 RT 342-343.)

## ARGUMENT

I.    **APPELLANT'S RIGHT TO DUE PROCESS WAS VIOLATED BECAUSE THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSES OF ATTEMPT AND BATTERY AS TO COUNTS 1 AND 2.**

### A.    Background

Appellant was charged in Counts 1 and 2 with sodomy by force, violence, duress, menace or fear under section 286, subdivision (c)(2). (CT 54.) The trial court refused appellant's request to instruct on the lesser included offense of attempt, stating that appellant would either be found guilty or not guilty based on the question of consent. (2 RT 403-405.) Appellant contends that instruction on the lesser included offenses of attempt, as well as battery, was required for at least one of the alleged counts of forcible sodomy.

On direct examination, Annette testified:

> Q  You mentioned that there was also -- that he would also touch your anus, your butt?
> A  Yes.
> Q  What would he touch your butt with? What part of his body would touch your butt?
> A  His penis. He couldn't penetrate it, no. But he would like, between my anus he would masturbate.
> .............................
> Q  When he would touch you with his penis on your

10

anus, would his penis be moving, or would it be still?

A    It was going up and down.  It was moving.  And it would masturbate himself and then back on me again.

Q    You said that that he tried to penetrate your anus with his penis?

A    Right.  He couldn't.  He couldn't.  He tried, but he couldn't.  It was hard.  So he would just masturbate on my butt, that's it.

Q    Would he attempt to put his penis inside your anus?

A    No.

Q    Would he try to put his penis between the cheeks of your butt?

A    Yes.

Q    And when he would put his penis between the cheeks of your butt, did a little bit or portion of his penis try to rub up against your anus?

A    A little bit, yes.  A little bit.  Yes.

Q    But he wasn't able to stick his whole penis inside your anus; correct?

A    No.

Q    Just a small, little bit?

A    Right.

(I RT 102-104.)

Appellant testified as to one of the two instances of alleged anal contact, agreed that he inserted his penis into her anus and ejaculated very quickly.  (2 RT 366.)  There was no specific testimony as other alleged acts of forced sodomy.

### B.    Standard of Review

On appeal, the appellate court reviews independently the question whether the trial court failed to give a required instruction on a lesser included offense.  (*People v. Cole* (2004)33 Cal. 4th 1158, 1215.)

### C.    Discussion

It is well established that a trial court has the duty to instruct as to whether all of the elements of the charged offense are present and there is

11

evidence that would justify a conviction of such a lesser offense. (*People v. Lopez* (1998) 19 Cal. 4th 282, 287, *People v. Breverman* (1998) 19 Cal. 4th 142.) Due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. (*Hopper v. Evans* (1982) 456 U.S. 605, 611 [72 L.Ed.2d 367, 373, 102 S.Ct. 2049], U.S. Const. Amend. V, XIV). The requirement that courts give *sua sponte* instructions on lesser included offenses "is based in the defendant's constitutional right to have the jury determine *every material issue presented by the evidence.*" (*People v. Ramkeesoon* (1985) 39 Cal. 3d 346, 351, emphasis added.)

The trial court has a sua sponte duty to instruct on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present and there is evidence that would justify a conviction of such a lesser offense. (*People v. Hughes* (2002) 27 Cal. 4th 287, 365 ("Hughes"), citing *People v. Hardy* (1992) 2 Cal. 4th 86, 184.) The California Supreme Court has explained that, "instructing on lesser included offenses shown by the evidence avoids forcing the jury into an "unwarranted all-or-nothing choice'" that could lead to an unwarranted conviction. (*Hughes, supra,* 27 Cal. 4th at 365, quoting *People v. Wickersham* (1982) 32 Cal. 3d 307, 323-324, overruled on other grounds in *People v. Barton* (1995) 12 Cal. 4th 186; *Beck v. Alabama* (1980) 447 U.S. 625, 633-638 [100 S. Ct. 2382, 2387-2390, 65 L. Ed. 2d 392]; "[A] defendant is entitled to a lesser offense instruction . . . precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction."

(*Keeble v. United States* (1973) 412 U.S. 205, 212-213 [93 S. Ct. 1993, 1998, 36 L. Ed. 2d 844].) Thus, the trial court must give the *sua sponte* instruction "when the evidence raises a question as to whether all of the elements of the charged offense were present, but not when there is no evidence that the offense was less than charged. (*People v. Barton* (1995) 12 Cal. 4th 186, 194-195.)

To determine whether a lesser offense is necessarily included in the charged offense, one of two tests (called the "elements" test and the "accusatory pleading" test) must be met. The elements test is satisfied when "all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense." (*People v. Anderson* (1975) 15 Cal. 3d 806, 809-810, quoting *People v. Francis* (1969) 71 Cal. 2d 66, 73; see *People v. Lagunas* (1994) 8 Cal. 4th 1030, 1034.) If a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former. (*People v. Birks* (1998) 19 Cal. 4th 108, 117; *People v. Toro* (1989) 47 Cal. 3d 966, 972; *People v. Lohbauer* (1981) 29 Cal. 3d 364, 369.)

Under the accusatory pleading test, a lesser offense is included within the greater charged offense "if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." (*People v. Toro, supra*, 47 Cal. 3d at p. 972.) Where the accusatory pleading is couched in terms of the statutory definition of the greater crime and no additional factual allegations are included therein, courts upon the statutory definition. (*People v. Anderson* (1975) 15 Cal. 3d 806, 809.)

California appellate courts have repeatedly accepted the principle that attempt is a lesser included offense of any completed crime. (*In re*

13

*Sylvester* (2006) 137 Cal. App. 4th 601, 609; see e.g. *People v. Aguilar*
(1989) 214 Cal. App. 3d 1434, 1336 [attempted burglary is a lesser included
offense of burglary]; *People v. Splawn* (1985) 165 Cal. App. 3d 553, 559
[attempted insurance fraud is a lesser included offense of insurance fraud].)

Instruction on attempt was required in the instant case because there
was evidence that the offense was less than charged. (*People v. Barton,
supra,* 12 Cal. 4th 186, 194-195.) Section 286, subdivision (a) provides:

> Sodomy is sexual conduct consisting of contact between the
> penis of one person and the anus of another person. *Any
> sexual penetration, however slight, is sufficient to complete
> the crime of sodomy.* (Emphasis added,)

In the direct examination of Annette, the prosecutor used the words
"butt" and "anus" interchangeably. (1 RT 102.) At one point, Annette
testified that appellant tried to penetrate her anus with his penis, but "He
couldn't. He couldn't. He tried, but he couldn't. It was hard. So he would
just masturbate on my butt, that's it." (1 RT 104.) At another point, she
testified that appellant would not attempt to put his penis inside her anus,
but would try to put it between the cheeks of her butt. (1 RT 104.) Most of
the testimony regarding the allegations was inspecific as to time. Appellant
admitted that on one occasion, he inserted his penis into Annette's anus and
ejaculated very quickly. (2 RT 366.) However, this admission does not
support two counts of forced sodomy. The issue is not whether there was
sufficient evidence to support conviction of sodomy but whether there was
enough evidence to support the lesser included offense of attempt. Based
on all the above, the trial court erred in failing to instruct the jury on the
lesser included offense of attempt as to at least one count of sodomy.

There was also a *sua sponte* duty to instruct on the lesser included
offense of battery. In *People v. Hughes* (2002) 27 Cal. 4th 287, 365-355,

14

the California Supreme Court concluded that "one cannot commit forcible sodomy without also committing battery, and, accordingly, battery is a necessarily included offense of forcible sodomy." Factors for determining whether instruction on battery as a lesser included offense of sodomy is required include whether bruises are found inside a victim's rectum consistent with penetration, or other physical evidence such as sperm or pubic hairs. (*Id.* at 367.) In the instant case, although Annette had reported that she had been assaulted on the day of March 16, 2004, a physical examination revealed no signs of visible trauma to her rectum, her anus, or vagina. (1 RT 187, 190.) Moreover, Annette testified that appellant had not penetrated her anus with his penis but had "masturbated on [her] butt, that's it." (1 RT 104.) Based on this evidence there was a sufficient basis to instruct on the lesser included offense of battery.

Reversal is required because it is reasonably probable that appellant would have obtained a more favorable outcome if the error had not occurred. (*People v. Breverman, supra*, 19 Cal. 4th 142, 178, *People v. Watson* (1956) 46 Cal. 2d 818, 836, Cal. Const. Art. VI, sec. 13.) As the California Supreme Court explained in *Hughes*, "instructing on lesser included offenses shown by the evidence avoids forcing the jury into an "unwarranted all-or-nothing choice'" that could lead to an unwarranted conviction. (*People v. Hughes, supra*, 27 Cal. 4th at 365.) Appellant was not charged with sexual battery or even battery, yet the evidence suggested that some form of sexual assault had occurred. Based on the instructions that were given, the only choice was to convict appellant of sodomy. Appellant was prejudiced by the trial court's failure to give the lesser included instructions as to battery and as to attempt. The judgment as to Count 1 and/or 2 must therefore be reversed.

15

II.    **APPELLANT'S DUE PROCESS RIGHTS WERE
       VIOLATED BECAUSE THERE WAS INSUFFICIENT
       EVIDENCE TO SUPPORT TWO CONVICTIONS OF
       FORCIBLE ORAL COPULATION.**

In *Jackson v Virginia* (1979) 443 U.S. 307, 318 [99 S.Ct. 2781,
2789, 61 L.Ed.2d 560, 573], the United States Supreme Court set forth the
constitutionally mandated rule for the review of the sufficiency of the
evidence supporting a criminal conviction.  The critical inquiry is whether
the record evidence could reasonably support a finding of guilt beyond a
reasonable doubt.  (*Ibid.*)  After viewing the evidence in the light most
favorable to the prosecution, the proper inquiry is whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  (*Ibid.*; U.S. Const. Amend. XIV)

In *People v Johnson* (1980) 26 Cal.3d 557, 576, the California
Supreme Court noted that California decisions provide an identical
standard, stating:

> The appellate court must determine whether a reasonable trier
> of fact could have found the prosecution sustained its burden
> of proving the defendant guilty beyond a reasonable doubt.
> . . . .
>
> Evidence, to be '*substantial'* must be 'of ponderable legal
> significance...*reasonable* in nature, *credible*, and of *solid
> value*.' [citation]" (Emphasis added.)

*Johnson, supra*, 26 Cal.3d at p. 577, further states:

> The court does not, however, limit its review to the evidence
> favorable to the respondent.  As *People v Bassett* [(1968)] 69
> Cal.2d 122, explained, 'our task...is twofold.  First, we must
> resolve the issue in the light of the whole record – i.e., the
> entire picture of the defendant put before the jury – and may
> not limit our appraisal to isolated bits of evidence selected by
> the respondent.  Second, we must judge whether the evidence
> of each of the essential elements...is *substantial*; it is not

16

enough for the respondent simply to point to "some" evidence supporting the finding, for "Not every surface conflict of evidence remains substantial in the light of other facts."'(69 Cal.2d at p.138)" (Emphasis in original.)

*Johnson, supra,* 26 Cal.3d at 578, summarizes the proper standard:

We think it sufficient to reaffirm the basic principles which govern judicial review of a criminal conviction challenged as lacking evidentiary support: the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses *substantial* evidence – that is, evidence which is *reasonable, credible,* and of *solid value* – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (Emphasis added.)

(See also *People v Davis* (1995) 10 Cal.4th 463, 509, 510.)

Appellant was charged in Counts 5 and 6 with oral copulation under section 288a. Annette testified that one time, appellant licked her vagina while struggling with her (1 RT 113) and another time, he motioned to her to lick his penis and she did. (1 RT 111.)[2]. The prosecution relied on a

---

[2]Annette testified in repsonse to the prosecutor's questions:
  Q. You also talked about that you would have to put your mouth on the defendant's penis?
  A  Yes.  I'd have to lick it.  I didn't like it.
  Q  Whose idea was it for you to put your mouth on Curt's penis?
  A  His.  His idea.  Yes.
  Q  Did you want to put your moth on his penis?
  A  No.  No.  I did not like it.
  Q  How did he show you or tell you that he wanted you to put your mouth on his penis?
  A  He would motion with his finger for me to come here in the garage and stuff.  And I'm, like, "What?"  And he says, "come her."  And then he would just show me.  And I'd just, like tell him, Please stop."  I didn't like it.
  Q  Did his penis go inside your mouth the first time?
  A  No.  It was just licking.  That was it.  I didn't like it.  It didn't taste very good.

17

theory of duress to support the charges. (2 RT 442.) The evidence was insufficient to support two allegations of oral copulation.

In *People v. Pitmon* (1985) 170 Cal.App.3d 38, 47-51, the court of appeal defined "duress" in relation to sexual offenses. (*People v. Leal* (2004) 33 Cal. 4th 999, 1004.) The court concluded that, within the context of section 288, subdivision (b), duress means "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." (*Pitmon, supra, 170* Cal. App. 3d at 50.) *Pitmon* held that the total circumstances of the case, including factors such as the age of the victim and his or her relationship to the defendant, are factors to be considered. (*Id.* at p. 51; *People v. Schulz* (1992) 2 Cal.App.4th 999, 1005.)

Later cases further analyzed when acts are committed by use of duress. Duress may involve psychological coercion (*People v. Senior* (1992) 3 Cal.App.4th 765, 775; *People v. Superior Court (Kneip)* (1990) 219 Cal. App. 3d 235, 238), but courts have found that psychological coercion alone may be insufficient. (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1320-21; *People v. Hecker* (1990) 219 Cal. App. 3d

---

Q   Did that happen on more that one occasionor -- more than one occasion?

A   It happened for, like just maybe a minute, and then he left.  I didn't like it.

Q   And did that happen just one time, or did it happen more than one time?

A   One time.   (1 RT 111.)

18

1238, 1250-1251; see also *People v. Schultz, supra*, 2 Cal.App.4th at p. 1005; see *contra, People v. Cochran* (2002) 103 Cal.App.4th 8, 15.) While the defendant's position of dominance and authority is relevant, it is also significant whether the victim believed that the defendant would "make" or "require" the victim to perform or tolerate the act. (*Ibid., People v. Sanchez* (1989) 208 Cal.App.3d 721, 748.) In addition, threats to harm the victim, physical control of the victim when the victim attempts to resist, warnings to the victim that revealing the molestation would result in jeopardizing the family, and "continuous exploitation" of a young victim, are pertinent to a finding of duress. (*People v. Cochran, supra*, 103 Cal.App.4th at pp. 13-14, citing *People v. Senior, supra*, 3 Cal.App.4th at p. 775, and *People v. Schultz, supra*, 2 Cal.App.4th at p. 1005.)

In *People v. Hecker, supra,* 219 Cal.App.3d 1238, the Court of Appeal, Fourth Appellate District, Division One, found insufficient evidence of duress, holding that such a finding required more than psychological coercion, and at least "an implied threat of 'force, violence, danger, hardship or retribution.'" (*Id.* at pp. 1250-1251, quoting *People v. Bergschneider* (1989) 211 Cal.App.3d 144, 154, fn. 9.) In *Hecker*, there were no threats, although the victim-stepdaughter felt "psychological pressure" and "subconscious fear." Because her stepfather did not seek to take advantage of her fear of him or that he was aware she was afraid, the appellate court found there was no duress. (*People v. Hecker, supra,* 219 Cal.App.3d at pp. 1250-1251.)

*Hecker* found the defendant's urging his 12-year old stepdaughter not to tell because it would break up his marriage to her mother, and ruin his naval career, was not duress. That testimony "establishes merely the threat of hardship directed at 'later disclosure of the sex acts and not [the

19

failure to perform] the sex acts themselves.'" (*Id.* at p. 1251, fn.7, quoting *People v. Bergschneider, supra,* 211 Cal.App.3d at p. 154, fn. 8.) This factor is one that other courts have found relevant to a "duress" analysis. (See, e.g., *People v. Senior, supra,* 3 Cal.App.4th at p. 775 [disagreeing with *Hecker* and *Bergschneider* that such warnings did not constitute duress, finding that a warning not to report a molestation implies the child should not resist or protest the molestation].).)

In *People v. Cochran, supra,* 103 Cal.App.4th at p. 15, the Court of Appeal, Fourth Appellate District, Division One, departed from its conclusion in *Hecker* finding that "[a] threat to a child of adverse consequences, such as suggesting the child will be breaking up the family or marriage if she reports or fails to acquiesce in the molestation, may constitute a threat of retribution and may be sufficient to establish duress, particularly if the child is young and the defendant is her parent. We also note that such a threat also represents a defendant's attempt to isolate the victim and increase or maintain her vulnerability to his assaults." (*Ibid.*) The *Cochran* court also distinguished the facts in *Hecker,* emphasizing that Hecker was the victim's stepfather rather than her father. (*Ibid.*)

In *People v. Espinoza, supra,* 95 Cal.App.4th 1287, the court of appeal found no substantial evidence of duress in a case involving a charge under section 288, subdivision (b). The victim was 12 years old and was in special education classes at school. (*Id.* at p. 1292.) Relying on *Schulz,* had prosecutor argued that duress was present because the defendant was older and much larger than the victim, the defendant was the victim's natural father, the defendant had not lived with the victim for many years, and the victim was afraid of the defendant. (*People v. Espinoza, supra,* 95 Cal.App.4th at p. 1319.) The trial court found that the defendant committed

20

the acts through duress because of the victim's dependence on the defendant, the size and age disparities, the victim's limited intellectual abilities and her fear of the defendant. (*Ibid.*)

The Court of Appeal disagreed, finding that *Schulz* involved substantially different facts, including a nine-year-old distraught victim whom the defendant cornered, and the use of both physical and psychological dominance. (*People v. Espinoza, supra*, 95 Cal.App.4th at p. 1320.) The court held that the facts that the defendant was larger than the victim and was her father, combined with her fear and limited intellectual ability, were not sufficient to establish that the acts were committed by duress. (*Id.* at p. 1321.) The court further ruled that what was missing was a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform the acts. (*Ibid.*) Specifically, there was no evidence of a direct or implied threat of any kind. (*Ibid.*) And while it was clear the victim was afraid of the defendant, there was no showing this fear was based on anything other than the fact that the defendant continued to molest her. (*Ibid.*)

Application of the law to this case shows that substantial evidence did not support a finding of duress with respect to the allegation involving appellant asking Annette to lick his penis. By her own account, appellant merely asked her to do it, although she did said she did not want to, and it did not taste very good. (1 RT 111-112.) There was no allegation that Annette was incapable of giving consent due to her disabilities. (See, e.g. section 288a, subdivision (g).) The circumstances here are vastly different from those in *Cochran*, in which a child was being sexually abused by her father who told her that if she told anyone he would get into trouble and go

21

to jail. (*People v. Cochran, supra*, 103 Cal. App. 4th 8, 15.) The *Cochran* court found this significant because of the "implicit threat that she would break up the family if she did not comply." (*Id.* at p. 16.)

The *Cochran* court also emphasized the distinction between the authority of the father central to that case, concluding that threat of the adverse consequences of breaking up her parents' marriage may have constituted a threat of retribution sufficient to establish duress. (*People v. Cochran, supra*, 103 Cal. App. 4th at 15.) Here, there was no evidence that appellant ever told Annette she could no longer live at the house or that her living situation would be jeopardized if she did not have sex with him. This case is more similar to *People v. Espinoza, supra,* 95 Cal.App.4th at 1320-1321, where disparity in size and the person's disabilities was found insufficient to establish duress. Based on all the above, the evidence was insufficient to support both counts of oral copulation under section 288a, and the judgment in at least one of the counts must be reversed.

III. **IMPOSITION OF CONSECUTIVE FULL TERM SENTENCES ON COUNTS ONE, TWO, FIVE, SIX, AND SEVEN UNDER SECTION 667.6, SUBDIVISION (D) VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO A JURY TRIAL BECAUSE THE JURY DID NOT DETERMINE WHETHER THE ALLEGED OFFENSES OCCURRED ON SEPARATE OCCASIONS.**

At sentencing, the court imposed aggravated, consecutive, full terms under section 667.6, subdivision (d), and stated:

> [THE COURT]: Also the jury did find various circumstances in aggravation. And over and above their finding the Court would also find that there are in fact circumstances in aggravation in this matter. The Court does note that each crime is a product of a separate course of conduct. Each crime was committed on separate occasions.

22

The crimes are independent of each other.  (2 RT 562.)

Appellant contends that by the court's finding above and beyond the jury's determinations, that each crime was committed on separate occasions, he was deprived of his right to a jury trial under the Sixth Amendment of the United States Constitution.

In *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490, 147 L.Ed.2d 435, 120 S.Ct. 2348, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely v. Washington* (2004) 532 U.S. 296, 124 S.Ct. 2531, 2537; 159 L.Ed.2d 403, the United States Supreme Court recently held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." The Court further explained,

> [T]he relevant "statutory maximum" is not the maximum
> sentence a judge may impose after making additional
> findings, but the maximum he may impose *without* any
> additional findings.  When a judge inflicts punishment that the
> jury's verdict alone does not allow, the jury has not found all
> the facts "which the law makes essential to the punishment
> [citation] and the judge exceeds his proper authority."

(*Blakely, supra*, 532 U.S. 296,  124 S.Ct. 2531, 2537; 159 L.Ed.2d 403 emphasis supplied by the Court.)

By going beyond the parameters of the jury's findings in the instant case, appellant was deprived of this fundamental right. In *People v. Black* (2005) 35 Cal. 4th 1238, the California Supreme Court rejected a similar contention with respect to California's Determinate sentencing statute. However, the United States Supreme Court recently granted certiorari in the

23

case of *Cunningham v. California* (Apr. 18, 2005, A103501) unpublished opinion, cert. granted 2/21/06 (05-6551) which challenges the constitutionality of California's determinate sentencing scheme with respect to aggravated sentences.  Appellant raises the issue here to preserve her rights to further review.

**CONCLUSION**

For all the reasons stated above, appellant respectfully requests that counts of violating section 286 and 288a be reversed, and that the case be remanded for resentencing.

Dated: May 14, 2006

Respectfully submitted,

JEAN MATULIS
Attorney for Appellant
CURTIS LEROY FREEMAN

DATE: July 29, 2008


Respectfully Submitted,

_Curt Freeman_
Curtis Leroy Freeman (Petitioner)
(In Propria Persona)

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**FILING FEE PAID**

AUG - 4 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**I (a) PLAINTIFFS**

Curtis Leroy Freeman

**DEFENDANTS**

Warden, et al

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Amador
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Curtis Leroy Freeman
PO Box 409020
Ione, CA 95640
V-94399

**ATTORNEYS (IF KNOWN)**

'08 CV 1421 J RBB

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

## 28 U.S.C. 2254

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USCR81 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE

Docket Number

DATE 8/4/2008

SIGNATURE OF ATTORNEY OF RECORD

CR